R. E. LeBlanc *v.* Illinois Central Railroad Company.

1. Courts. *Supreme court. Correction of judgment at subsequent term.*

    The supreme court is without power to correct its own judgment at a subsequent term on account of any error of law or of fact, although, to prevent a failure of justice, it will sometimes correct a judgment at a subsequent term, where the circumstances are peculiar and exceptional—as, in the case of fraud on the part of the person obtaining the judgment, the failure of the judgment as entered to accord with that intended to be entered, some misconception by the court of the case made in the record, or other circumstance of like nature. *Cotton* v. *McGehee*, 54 Miss., 621, cited.

2. Same. *Conformity of judgment with decision. Record. Fact not shown thereby.*

    The supreme court, after deciding a cause, and giving judgment accordingly, cannot sustain a motion to correct the judgment filed at a subsequent term, because of the existence of some fact neither pleaded nor proved in the court below, on the suggestion that such correction is necessary to make the judgment conform to the decision, although it might have remanded the cause with leave to amend, had the fact been suggested at the term in which the judgment was rendered.

From the chancery court of Pike county.

Hon. H. C. Conn, Chancellor.

The motion to correct the decree of reversal rendered at the March term, 1895, was filed during the October term, 1895, of the supreme court. It sets forth the following grounds: (1) Because by oversight the decree as drawn gives the appellant a part of the roadbed and main track and right of way of the appellee; (2) because the decree of the court below expressly reserves to the appellee its right of way and track in section 14, township 7, range 1, east, and confirms the tax title of the appellant to the remaining land claimed by him in that section, this decree of the court below being in exact accordance with

the opinion of this court, while the decree rendered here, by mistake, reverses the decree of the court below as to this, thus giving the appellant the track and roadbed of the appellee in section 14, and the appellant is now asserting title to said track and roadbed and right of way by virtue of this erroneous decree; (3) because the decree was drawn by counsel for the appellant, and counsel for the appellee was misled by the statement of the counsel for the appellant, who drew the decree, that no part of the right of way or roadbed of the appellee was embraced, and the court adopted the decree drawn under the mistaken impression that no part of the appellee's right of way passed by it; (4) that this mistake was not discovered by the appellee until the appellant asserted title to said track and right of way in section 14, as to which he has now undertaken to dispossess the appellee by an action in ejectment now pending in the circuit court of Pike county.

*Mayes & Harris*, for the appellee,

Filed a brief in support of the motion, to the following effect:

The cross bill of the appellant, in itself, set up an interest in section 14 claimed by the appellee. If the appellee was claiming no interest in section 14, then the cross bill, as to that section, would certainly have been out of place. The appellee answered, not denying that it has any interest in section 14, but calling upon the complainant in the cross bill to establish his title. The testimony taken in the case, aside from the question of the use of the gravel, and the documentary evidence, is all general and applied as well to section 14 as to section 11. When the proof was all in, the chancellor rendered his decree, saving to the appellee its right of way and roadbed in section 14, expressly reciting, on the face of the decree, what that interest was. It cannot be said that this matter was not before the chancellor. The presumption must be that the chancellor had sufficient proof before him to support the decree, and his action in this regard was not assigned for error. The case,

then, is one in which the appellant, in his cross bill, sets up a claim by the appellee, of title to, or an interest in, section 14; the proof is all taken, and the chancellor determines that interest, and finds it to be the roadbed, right of way and railway track. It now appears that the counsel of appellant, in preparing the final decree here, did not know that the decree of the chancellor contained this reservation, and that the entire discussion was over the gravel pits, in the lower court as well as here. Such being the case, he cannot object to the correction now asked for, since he, the court, and counsel for appellee were all misled. This court has full power to correct the decree so as to make it conform to the principles announced in its opinion.

Argued orally by *J. B. Harris*, for the motion, and by *H. Cassedy*, contra.

Cooper, C. J., delivered the opinion of the court.

This is a motion by appellee to correct a decree of this court, made at a former term, so that it may conform to the opinion of the court therein. The case is reported in 72 Miss. (p. 669), and the facts are there stated by the reporter in so far as they are necessary to an understanding of the opinion.

For an intelligent appreciation of the question presented by the motion now before us, it is necessary to state the facts presented by the pleadings and the decrees made in the court below and in this court on the appeal. The litigation was commenced by the company, which filed its bill to cancel a tax title held by LeBlanc to a certain described portion, not necessary to be herein named, of the southeast quarter of the southwest quarter of section 11, township 1, of range 7, east, in Pike county. The bill alleged that, across this subdivision of land complainant's track was laid, and that it also owned a strip of land adjacent thereto, upon which was situated a gravel pit, from which gravel was taken and used in ballasting its road-

way.   It was further alleged by complainant that it had paid all taxes due on this land, for which reason the tax sale was void.

LeBlanc answered the bill, and, while admitting that the roadway of the complainant was upon the land, denied that it had ever, either by condemnation proceedings or contract, acquired any right in the land.   Having answered the bill, which, as will be noted, referred only to land in section 11, the defendant, by way of cross bill, set up that he was also the owner of certain parts of section 14, in the same township and range, which ownership he had acquired also by tax sale; that the defendant asserted same claim to this land; and the prayer of his cross bill was that his tax title to the land described in complainant's bill, and also to that described in the cross bill, should be quieted and perfected.   The complainant did not demur to the cross bill because it brought into the controversy a distinct subject-matter which was not essential to the defense of the cross complainant, but answered the cross bill fully, denying the validity of the tax title to the land in section 14. Nothing was said in its answer about any part of its roadway being on the land in section 14, but, as to it, the whole controversy was between the cross complainant claiming to have a valid tax title, and the defendant denying generally the validity of such title.   The controversy, shortly stated, as made by the pleadings, was this: ·LeBlanc claimed a valid tax title to the lands described in sections 11 and 14; the railroad company claimed that it owned a part of them, had paid the taxes for which they were sold, and that its roadway was laid across the lands in section 11, and that it owned the gravel pit adjacent to this roadway in section 11, and used it as a necessary appurtenance to its business as a common carrier.

A great mass of testimony was taken, relating largely to the use made by the company of the gravel pits situated adjacent to the right of way.   On final hearing, the chancellor held that the company was entitled to all it claimed in section 11—*i. e.,*

its right of way and gravel pit—and also to its right of way on the land in section 14.

On appeal, we held that the gravel pit was not used by the company for railroad purposes, but for the purpose of selling gravel therefrom as a private owner would do, and, hence, that it did not belong to the class of property covered by the commutation tax which railroads were permitted to pay, but was assessable and salable for taxes, as other property, by the local authorities, but that the right of way was covered by the commutation tax, and the sale thereof was void. In the argument of the cause, it was not suggested that any part of the roadway was on section 14. That fact did not appear in the pleadings or evidence, and, hence, in the opinion and decree the tax title of LeBlanc was canceled only as to the right of way in section 11, and, as to the other lands, it was ordered to be quieted and perfected.

Since the adjournment of the term at which the decree here was made, it has been discovered that in fact a part of the roadway of the company is on the land in section 14, for which LeBlanc has now brought an action of ejectment, and we are now asked to correct the decree so as to protect the company in its ownership of this part of its track. The motion is sought to be sustained by the argument that the decree does not conform to the opinion of the court and was made under misapprehension of material facts.

In *Cotten* v. *McGehee*, 54 Miss., 621, the question of the power of this court over its judgments after the lapse of the term at which they are rendered, was discussed, and it was held that while, as a general rule, the court had no power to set aside its judgments at a subsequent term, yet, under peculiar and exceptional circumstances—such as fraud upon the part of the party obtaining the judgment, or that the judgment entered does not accord with that intended to be entered, or there has been a misconception by the court of the case made in the record, and circumstances of like nature—the court, to prevent

a failure of justice, could interpose, even at a subsequent term, and correct the judgment. But we think no case can be found in which the court, at a subsequent term, has corrected mere errors of law or of fact in its former adjudications. To do this would be not only to review the decisions of inferior tribunals, for which purpose, and for which alone, it is organized, but also to review its own decisions, which power is neither given by the constitution nor implied in the nature of the functions it was created to perform.

But we are requested now to go even beyond this limit, and to decide, for the first time, upon a question not presented by the record, on which our former opinion rested. Judicial decision is the application, by a court of competent jurisdiction, of the law to a state of facts proved, or admitted to be true, and a declaration of the consequences which follow. To preserve the orderly administration of justice, it is essential that there shall be a controversy between the parties litigant, either as to the law or the facts, which controversy is called the issue.

On the former investigation of this cause we announced the law to be that the roadbed of the company was protected from a sale for taxes because all taxes due on it had been discharged by payment of the commutation tax. And we also decided, because of the fact pleaded and proved by the company, that a part of the land in section 11 was occupied by the roadbed, and that the tax title asserted by LeBlanc was, as to this land, void. In other words, we announced the law, applied it to the facts, and declared the result, and this was decisive. And so we announced the law applicable to the facts pleaded and proved with reference to the land in section 14—*i. e.*, that it was liable to sale for taxes, and that LeBlanc's title thereto should be quieted. But we are now told that the roadway of the company is in truth, also, on a part of this land, and because it is, that the decree should be reformed to conform to the decision the court would have made if it had been fully informed of the facts, and we are asked to accept the fact to be as stated, not because

it was pleaded or proved, but because the decree of the court below found it so to be.    The reply to this is, that we have the same pleadings before us that the chancellor had. and they show no such averment, and we have the same evidence he had, and the fact is not proved, and so his decree in this respect was erroneous, because he applied the law to a fact neither in issue nor proved.    In this condition of the record, if the cause was now on hearing before us, we would again announce the law to be what we have said it was, and apply it just as we have to the facts pleaded and proved.    As we reversed the decree of the chancellor, we would, if our attention had been called to the facts, have remanded the cause to have given the company an opportunity to amend its pleadings.    But it is too late now to afford that relief, and we have no power to afford any. *King* v. *Ruckman*, 7 C. E. Green (N. J.), 552.

*Motion overruled.*